## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**REGINALD WILLIAMS**                                                                         **PLAINTIFF**

**v.**                                            **Case No. 4:23-cv-00713-KGB**

**SUMMIT UTILITIES**
**ARKANSAS, INC.**                                                                        **DEFENDANT**

### OPINION AND ORDER

Plaintiff Reginald Williams brings claims against his former employer defendant Summit

Utilities Arkansas, Inc. ("Summit") pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights

Act of 1991, which is codified at 28 U.S.C. § 1658; the Rehabilitation Act of 1973, 29 U.S.C. §

701 *et seq*.; and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA")

(Dkt. No. 10).  The Court acknowledges that the parties, in their briefing, also address a claim

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII").

Williams alleges racial discrimination, disability discrimination, and a failure to accommodate his

disability (Dkt. No. 10).  Before the Court is Summit's motion for summary judgment (Dkt. No.

23).  Williams responded in opposition, and Summit replied (Dkt. Nos. 33; 37).  For the following

reasons, the Court grants Summit's motion for summary judgment (Dkt. No. 23).

### I.    Factual Background

As required by Federal Rule of Civil Procedure 56 and Local Rules 56.1 and 7.2, Summit

submitted a statement of undisputed fact in support of its motion for summary judgment (Dkt. No.

25).  Williams responded to Summit's statement of fact (Dkt. No. 34).  Unless otherwise cited, the

Court recounts the facts from Summit's statement of fact and Williams's response to the statement of fact (Dkt. Nos. 25; 34).[1]

Summit is a natural gas energy provider to customers throughout Arkansas (Dkt. No. 34, ¶ 1). Summit expanded its business in Arkansas with the acquisition of CenterPoint Energy, Inc.'s ("CenterPoint") Arkansas natural gas distribution systems on January 10, 2022 (*Id.*, ¶ 2). Summit maintains an Equal Employment Opportunity Policy, an Anti-Discrimination, Anti-Harassment, and Anti-Retaliation Policy, and a Reasonable Accommodations Policy (*Id.*, ¶ 3).

Summit is committed to providing a workplace free from discrimination, harassment, and retaliation and does not tolerate any form of unlawful discrimination, harassment or retaliation against any employee or applicant based on race or disability, among other protected statuses (*Id.*, ¶ 4). Williams denies this commitment by citation to instances of alleged discrimination at CenterPoint and Summit, but the alleged discrimination does not question Summit's commitments (*Id.*, ¶ 4). Williams never made any complaints to Summit about alleged discrimination until after his discharge (*Id.*, ¶ 5).

At the time of Summit's CenterPoint acquisition, Williams was employed by CenterPoint as a Service Technician III (*Id.*, ¶ 6). Williams's employment with CenterPoint ended, and he became a Service Technician III at Summit effective January 10, 2022 (*Id.*, ¶ 6). Willaims denies

---

[1] Pursuant to Local Rule 56.1(c) of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas*, "[a]ll material facts set forth in the statement filed by the moving party. . . shall be deemed admitted unless controverted by the statement filed by the non-moving party. . . ." Williams must support his denials with relevant, admissible evidence in the record before the Court, as required by Federal Rule of Civil of Procedure 56(c). *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to [support] properly an assertion of fact or fails to [address] properly another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993) (finding that only admissible evidence is permitted for consideration at summary judgment).

this fact by supplementing a more detailed description of the positions and details of his employment but does not deny the underlying fact (*Id.*,¶ 7).

As a Service Technician III, Williams worked independently in the field, driving a company vehicle to reach customer locations and perform work orders, most of which take longer than 10 minutes to complete (*Id.*,¶ 8). Williams's duties included responding to gas and carbon monoxide leak calls, performing emergency temporary line repairs, performing leak surveys and natural gas locates, reading gas meters, programming and replacing electronic remote transmitters, building meter sets to company standards, and removing, installing, and replacing gas meters including turn-on and shut-off activities and pressure tests (*Id.*, ¶ 9). The duties of a Service Technician III required certain physical demands, including constantly standing and walking, with only occasional sitting (*Id.*, ¶ 10). The Service Technician III job also requires lifting/carrying up to 20 pounds frequently and over 21 pounds occasionally and pushing/pulling up to 25 pounds frequently and over 26 pounds occasionally (*Id.*, ¶ 11).[2]

Once employed by Summit, around February 16, 2022, Williams slipped, fell, and re-opened a diabetic wound on his foot for which he had been seeking treatment (*Id.*, ¶ 12). On February 16, 2022, Williams visited his treating physician, Dr. Thrash, who determined Williams could not walk, stand, climb, push, or pull, could not lift over 10 pounds, and could only occasionally lift up to 10 pounds (*Id.*, ¶ 13). Dr. Thrash estimated Williams would have these restrictions until April or May 2022 (*Id.*, ¶ 14). Dr. Thrash said Williams should not work for four weeks (*Id.*, ¶ 15). Based on these restrictions, Summit approved Williams's request for continuous

---

[2] Williams's response to Summit's statement of undisputed facts ¶ 11 reads "Response:" and contains no admission or denial (Dkt. No. 34, ¶ 11). Pursuant to Local Rule 56.1(c), the Court deems this fact admitted.

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, leave in February 2022 (*Id.*, ¶ 16).

On April 27, 2022, Williams submitted a request for an accommodation; he stated he needed accommodations for walking, standing, sitting, lifting, and carrying, but he did not request any specific accommodation (*Id.*, ¶ 17).  With his accommodation request, Williams submitted a return to work form completed by Dr. Thrash (*Id.*, ¶ 18).  According to Dr. Thrash, in April 2022, Williams could not lift over 10 pounds, push or pull over 25 pounds, engage in continuous walking or standing for more than 10-15 minutes per hour, perform repeated stooping, crawling, or kneeling, or be in a cramped position for more than 10-15 minutes an hour (*Id.*, ¶ 19). [3]

Dr. Thrash stated that Williams's restrictions would continue "until [his] wound has healed," which he estimated would take at least three more months—three months beyond his initial estimate (*Id.*, ¶ 20).  Around May 9, 2022, Summit had a call with Williams as part of the interactive process concerning his request for an accommodation (*Id.*, ¶ 21).  Williams's leave under the FMLA therefore continued until May 17, 2022 (*Id.*, ¶ 23).  Summit granted him additional leave until June 15, 2022—after his FMLA leave expired—for the duration of his short-term disability leave (*Id.*, ¶ 24).  When Williams's short-term disability was extended until August 17, 2022, Summit also extended his leave, beyond his entitlement to FMLA leave (*Id.*, ¶ 25).  Williams denies that Summit extended his leave beyond his entitlement to FMLA leave, but Williams in his denial does not contest the substance of the Summit's factual statement (*Id.*, ¶ 25).  Summit advised Williams his leave would end effective August 26, 2022 (*Id.*, ¶ 26).

---

[3] Williams's response to Summit's statement of undisputed facts ¶ 19 reads "Response:" and contains no admission or denial (Dkt. No. 34, ¶ 19).  Pursuant to Local Rule 56.1(c), the Court deems this fact admitted.

4

Williams's diabetic wound was not healing, however, and he remained incapable of performing his job duties (*Id.*, ¶ 27). Williams denies this fact with citation to record evidence that Williams advised Summit he was able to return to work for light duty and that he requested that he be placed on light duty as an accommodation, but Williams does not deny that the diabetic wound was not healing or that he was incapable of performing his job duties (*Id.*,¶ 27).

On August 30, 2022, Summit sent Williams a letter explaining that it needed his Fitness for Duty/Return to Work paperwork by August 31, 2022 (*Id.*,¶ 30). The letter advised that if Summit did not receive the necessary paperwork, his employment would end effective August 31, 2022 (*Id.*, ¶ 30). On August 31, 2022, Dr. Thrash's office sent Summit Williams's Return to Work paperwork that said Williams could return to work with restrictions: continuous walking limited to 10 minutes per hour and continuous standing limited to 10 minutes per hour, as well as a lifting/carrying/pushing/pulling restriction (*Id.*, ¶ 31). On September 1, 2022, Williams submitted a second request for an accommodation based on his latest restrictions from Dr. Thrash (*Id.*, ¶ 32).

In response to the form's question "Where assignment to another position is requested as an accommodation, the employee must review open positions posted in ADP Workforcenow>Myself>Talent>Career Center and document the position and location requested" Williams said, "If another position requested that [is] fine but I rather stay as Service Tech III." (*Id.*,¶ 33). Williams did not identify any other positions that he was seeking as an accommodation or give any indication that he had searched open positions (*Id.*, ¶ 34).

On September 2, 2022, Williams spoke with Summit representatives by phone about his request for accommodation (*Id.*, ¶ 35). Williams performed his fieldwork independently, so there

was no way for Summit to ensure that he would not exceed his restrictions while he was out in the field (*Id.*, ¶ 38). [4]

With Williams's FMLA and unpaid leave fully exhausted, and without any other possible accommodation available, Summit decided to terminate Williams's employment effective September 6, 2022, because he was unable to perform the essential functions of his position with or without a reasonable accommodation (*Id.*, ¶ 39).  However, Williams disputes whether any other possible accommodation was available, namely work in a light duty capacity (*Id.*, ¶ 39).  By letter dated September 6, 2022, Summit advised Williams that it was not able to accept his proposed accommodation of returning to work with the limitation that he could only stand or walk 10 minutes per hour over the next three months (*Id.*, ¶ 40).  The September 6 letter informed Williams that his employment with Summit ended effective September 6 (*Id.*, ¶ 41).  No one at Summit mentioned Williams's race or used a racially derogatory comment at any time during the accommodation or termination process (*Id.*, ¶ 42).

Shane Hackler is a White male, and he was Williams's supervisor at the time Williams took leave and requested accommodation (*Id.*, ¶ 43).  Summit shows no records of Hackler being provided an accommodation (*Id.*, ¶ 44).  Williams denies this fact by reference to a prior denial and response (*Id.*, ¶ 44).  That denial points to hearsay evidence of Hackler's purported accommodation (*Id.*, ¶ 4).

Randy Brown is a White man who worked as a Service Technician III (Dkt. No. 25, ¶ 45).  Brown worked at a different facility and had a different supervisor from Williams (*Id.*, ¶ 46).

---

[4] Williams denies this statement of fact, but that denial does not address, with citation to record evidence, whether Williams performed his fieldwork independently or whether there was no way for Summit to ensure that Williams would not exceed his restrictions while he was out in the field (Dkt. No. 34, ¶ 38).  The Court deems this fact admitted.

Williams agreed Brown did not have the same types of restrictions that he did (*Id.*, ¶ 47). Summit maintains its records show it has not provided an accommodation to Brown (*Id.*, ¶ 48). Williams denies this fact by reference to a prior denial and response (*Id.*, ¶ 48). That denial points to hearsay evidence of Brown's purported accommodation (*Id.*, ¶ 4).

Steve Kyzer is a White man who worked as a Service Technician III; Kyzer was supervised by a person named Travis [last name unknown] (Dkt. No. 25, ¶ 49). Summit maintains its has no record of providing an accommodation to Kyzer (*Id.*, ¶ 50). Williams denies this fact by reference to a prior denial and response (*Id.*, ¶ 50). That denial points to hearsay evidence of Kyzer's purported accommodation (*Id.*, ¶ 4).

Eric Neal is a White man who worked as a crew leader or foreman in Summit's Construction Department (Dkt. No. 25, ¶ 51). Summit maintains it has no record of providing an accommodation to Neal (*Id.*, ¶ 52). Williams denies this fact by reference to a prior denial and response (*Id.*, ¶ 52). That denial cites to record evidence of Summit providing an accommodation to Eric Neal (*Id.*, ¶ 4; *see* Dkt. No. 34-2, at 7).

Paxton Perry is a White man who was employed by Summit as a Service Technician I (Dkt. No. 34, ¶ 53). Summit has not provided any accommodations to Perry (*Id.*, ¶ 54). Williams denies this fact by reference to a prior denial and response (*Id.*, ¶ 54). Williams's denial cites to record evidence of interrogatories, but the referenced interrogatories and document do not mention Paxton Perry (*Id.*, ¶ 4; *see* Dkt. No. 34-2, at 5).

Jeff Smith is a White man who worked as a Service Technician III in Little Rock under supervisor Travis [last name unknown] (Dkt. No. 34, ¶ 55). Smith injured his knee on May 30, 2022 (*Id.*, ¶ 56). On June 1, 2022, Smith's physician placed him on modified duty in which his only restrictions were that he could not bend, stoop, push, or pull until his next appointment in a

week (*Id.*, ¶ 57).  Smith did not submit a formal request for an accommodation, and his supervisor assigned him to operate machinery in the warehouse over the next few work days (*Id.*, ¶ 58).  On June 8, 2022, Smith's physician released him without restrictions (*Id.*, ¶ 59).

Bobby Thompson is a White man who worked at Summit's Jacksonville, Arkansas, facility (*Id.*, ¶ 60).[5]  In April 2023, Thompson requested an accommodation of no nighttime driving due to a cataract in one eye until after his scheduled cataract surgery in May 2023 (*Id.*, ¶ 61).  On April 28, 2023, Summit granted Bobby Thompson's requested accommodation (*Id.*, ¶ 62).  After Bobby Thompson's surgery and a short leave period, in June 2023, he returned to work without restrictions (*Id.*, ¶ 63).

Williams described his alleged distress as "just worrying about the job" and that he was "[s]tressed out I didn't have it." (*Id.*, ¶ 64).  Williams denies this statement and provides additional citation to record evidence of Williams's alleged distress (*Id.*, ¶ 64).  Williams said his blood pressure was up and he was "mad" and "angry." (*Id.*, ¶ 65).  Williams said he thought of "get[ting] back at them," meaning Summit (*Id.*, ¶ 66).  Although Williams mentioned his termination to his doctor on one occasion, he never sought any type of medical treatment for his alleged mental anguish (*Id.*, ¶ 67).  Williams's doctor told him, "I think you're going to be all right." (*Id.*, ¶ 68).

## II.    Summary Judgment Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the

---

[5] Summit represents that it erred in its opening brief and statement of facts, naming Bobby Thompson as Bobby Williams (Dkt. No. 37, at 3 n.2).  Williams's brief in opposition to summary judgment references Bobby Thompson (Dkt. No. 35, at 27).

movant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The party requesting summary judgment is 'entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(c), if the non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Vaughn v. Wallace*, 496 F.3d 908, 910–11 (8th Cir. 2007) (internal quotations omitted).

"In ruling on a motion for summary judgment [t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be *admissible at trial*." *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (internal citations omitted) (emphasis added). "Inadmissible hearsay evidence alone may not defeat a summary judgment motion." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993); *see Sherman v. Collins*, 158 F.4th 904, 908 (8th Cir. 2025) (affirming summary judgment where evidence of discrimination was based on inadmissible hearsay).[6]

"'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable

---

[6] Summit's brief explained that Williams's evidence of similarly situated White employees receiving accommodation is primarily based upon hearsay or personal speculation (Dkt. No. 24, at 14 n.7). Despite notice of these evidentiary concerns, neither Williams's response to Summit's statement of undisputed fact nor his brief in opposition to summary judgment addressed Summit's evidentiary arguments (Dkt. Nos. 34; 35). Summit replied and again pointed out that "Williams continues to claim—based on either hearsay or personal speculation—that Summit provided each of them an accommodation." (Dkt. No. 37, at 3). Williams did not seek leave to supplement the factual record or explain why the evidence of other purported accommodations is admissible. Without directing the Court to an explanation of why the hearsay evidence is admissible, the Court determines that Williams's hearsay statements are not admissible evidence that can establish his case for discrimination.

jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.    Race Discrimination Under 42 U.S.C. § 1981

#### A.    Legal Standard

The legal standard for summary judgment on a race discrimination claim is the same as any other summary judgment motion. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) ("There is no 'discrimination case exception' to the application of summary judgment"). "To survive a motion for summary judgment on the race discrimination claim, [Williams] must either present admissible evidence directly indicating unlawful discrimination, or alternatively, [Williams] could create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas . . . .*" *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014); *see Collins v. Union Pacific Railroad Company*, 108 F.4th 1049, 1053 (8th Cir. 2024).

"To prove intentional discrimination through direct proof, a plaintiff must establish a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (internal quotations omitted).    Under *McDonnell Douglas*, "[t]o establish a *prima facie* case for race discrimination, 'a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).'" *Young*, 754 F.3d at 577 (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)).

If Williams establishes the *prima facie* case for discrimination, then "the burden shifts to [Summit] to provide a nondiscriminatory reason for the discharge." *Walker v. First Care Management Group, LLC*, 27 F.4th 600, 605 (8th Cir. 2022) (citing *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125 (8th Cir. 2017)). "If [Summit] meets its burden, [Williams] must demonstrate [Summit's] proffered nondiscriminatory reason was pretext for intentional discrimination." *Walker*, 27 F.4th at 605.

Finally, under § 1981, "a plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat. Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333 (2020). This standard is more rigorous than that applied under Title VII race discrimination claims, which applies the "motivating factor" causation test. *Id.*, at 336–41.

### B.    Analysis

Summit argues that it is entitled to summary judgment at the *prima facie* stage because Williams cannot show an inference of unlawful discrimination by pointing to similarly situated

11

employees outside of Williams's protected class who were treated more favorably than he was treated (Dkt. No. 24, at 12–16). Summit also argues that, even if Williams could make out the *prima facie* case, he fails at the pretext analysis because he was terminated because he could not perform the essential functions of his job with or without accommodation (*Id.*, at 16). Williams argues that he has shown that similarly situated White coworkers were treated more favorably than he was treated therefore establishing an inference of discrimination (Dkt. No. 35, at 22–29). Williams does not address whether he could perform the essential functions of his job with or without accommodation.[7] The Court agrees with Summit that Williams has failed to present admissible evidence establishing the *prima facie* case permitting an inference of race discrimination and, even if he had, has not demonstrated that Summit's termination of him was pretext for intentional discrimination.

Summit argues that Williams has not presented any direct evidence of discrimination and so *McDonnell Douglas* should apply (Dkt. No. 24, at 11). Williams's response does not address the lack of direct evidence and appears to accept that there is no direct evidence of race discrimination (Dkt. No. 35, at 9–10). Accordingly, the Court applies the *McDonnell Douglas* burden shifting framework.

The parties leave the first three elements of the *prima facie* case of race discrimination unaddressed, that: (1) Williams is a member of a protected class, (2) Williams met his employer's legitimate expectations, and (3) Williams suffered an adverse employment action, here termination. *See Young*, 754 F.3d at 577. The record before the Court points to Williams having satisfied each of these elements, but because the Court concludes that Williams fails to present

---

[7] Williams does not address whether he could perform the essential functions of his position in the portion of his brief refuting the allegedly pretextual reason for his firing nor in the disability discrimination portion of his brief (Dkt. No. 35).

evidence of circumstances giving rise to an inference of discrimination, the Court need not decide whether the first three elements of the *prima facie* case are met.

To satisfy the *prima facie* requirement of demonstrating circumstances that give rise to an inference of racial discrimination by reference to similarly situated persons who were treated more favorably than he was treated, Williams "must show the employees were 'similarly situated in all relevant respects.'" *Young*, 754 F.3d at 578 (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012)). That is, the comparator must be similar to Williams in all relevant respects, except with regard to race. However, the comparator need not be a "clone." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013). Some factors to consider include whether the comparator dealt with the same supervisors, was subject to the same standards, or engaged in the same conduct without any mitigating or distinguishing circumstances. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2003). "The threshold of proof necessary to make a *prima facie* case is minimal. . . ." *Johnson v. Arkansas State Police*, 10 F.3d 547, 551 (8th Cir. 1993). "While '[t]he burden of establishing a prima facie case of disparate treatment is not onerous,' the plaintiff must be able to produce some evidence of similarity between her and her comparator." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087–88 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1047).

If Williams meets the *prima facie* elements, he must overcome Summit's proffered nondiscriminatory explanation by making a showing of pretext. The pretext analysis applies a "rigorous" review of the similarly situated individuals. *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 939 (8th Cir. 2023). Williams must create a genuine dispute of fact about whether the circumstances permit the reasonable inference that the real reason Summit terminated Williams was because of his race. *See Torgerson*, 643 F.3d at 1050–51. In a § 1981 action, the pretext showing requires Williams to prove a genuine dispute of material fact that Williams's race was

the but-for cause of his termination. *Comcast Corp.*, 589 U.S. at 340. Williams's burden in rebutting Summit's explanation is not the "motivating-factor" analysis applied to Title VII claims but the § 1981 burden is higher. *Id.*

The Court is not convinced that Williams establishes the *prima facie* case of discrimination because he has not produced record evidence to show that similarly situated persons who were treated more favorably than he was. However, recognizing that Williams's *prima facie* burden is minimal, even if Williams establishes the *prima facie* case, which the Court concludes he does not, based upon the full record before it, the Court finds that there is no genuine dispute of material fact such that a reasonable juror could conclude Williams's termination was pretextual. That is, based upon Summit's proffered explanation, the lack of valid comparators, and Williams's lack of explanation as to why Summit's explanation was pretextual, viewing the record evidence with all reasonable inferences drawn in favor of nonmoving party Williams, no reasonable jury could find that racial discrimination was the but-for cause of Williams's termination. Accordingly, Summit is entitled to judgment as a matter of law on Williams's race discrimination claim.

The Court writes to address each of the proposed comparators:

Shane Hackler

Shane Hackler, a White male, was Williams's supervisor when Williams took leave and requested accommodations. Williams argues that Hackler was allowed light duty by working in the office (Dkt. No. 3, at 28).

The Court finds that Hackler is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage. First, Hackler was accommodated by CenterPoint prior to Summit's acquisition (Dkt. Nos. 24-2, at 126:21–127:6). Second, Williams does not believe that Summit gave Hackler preferential treatment because of his race (*Id.*, at 70:5–

7). Third, Hackler had a different position than Williams, as Hackler was Williams's supervisor. Taken together, Hackler and Williams were not similarly situated in all relevant respects. *See Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 865 (8th Cir. 2008) (finding comparator not similarly situated when individual had a different supervisor); *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 937–39 (8th Cir. 2019) (finding comparators not similarly situated when they had different positions and supervisors).

<u>Randy Brown</u>

Randy Brown, a White male, worked as a Service Technician III. Brown worked at a different facility and had a different supervisor from Williams. Brown did not have the same type of restrictions as Williams. Williams alleges that Brown was accommodated by working only during the day and exempted from nighttime driving based on a condition with his vision, but there is no record evidence that Summit ever provided Brown an accommodation.

The Court finds that Brown is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage. First, Williams's lack of admissible evidence regarding whether Summit accommodated Brown means that Brown cannot be a valid comparator because there is no record evidence that Brown was treated differently than Williams. In this respect, Williams fails to meet his burden of presenting admissible evidence to establish the *prima facie* case of discrimination. Second, even if Brown were accommodated, the difference in facility, supervisor, and extent and nature of Brown's restrictions makes Brown too dissimilar to be an appropriate comparator. *See Fields*, 520 F.3d 865 (finding not similarly situated when in a different facility and different supervisor).

15

Steve Kyzer

Steve Kyzer, a White male, worked as a Service Technician III. Kyzer's supervisor was a person named Travis. Summit has no record of providing an accommodation to Kyzer. Williams relies on hearsay statements made by Kyzer and another co-worker, Keith Bynum, to claim that Summit accommodated an ankle injury experienced by Kyzer. Williams alleges that Kyzer was provided light duty.

The Court finds that Kyzer is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage. First, Williams's lack of record evidence regarding whether Summit accommodated Kyzer means that Kyzer cannot be a valid comparator because there is no record evidence that Kyzer was treated differently than Williams. In this respect, Williams fails to meet his burden of presenting admissible evidence to establish the *prima facie* case of discrimination. Moreover, even if Kyzer were accommodated, because Kyzer and Williams had different supervisors, Williams fails to demonstrate that he and Kyzer are similarly situated in all relevant respects.

Eric Neal

Eric Neal, a White male, worked as a crew leader or foreman in Summit's Construction Department. It is disputed whether Neal was provided an accommodation to perform light duty work (*see* Dkt. No. 34-2, at 12 (Interrogatory No. 14)).

Regardless, the Court finds that Neal is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage. Williams cites to admissible record evidence indicating that Neal was provided with an accommodation of "light duty" construction work (*Id.*). However, Neal and Williams are dissimilar in relevant respects. First, Neal's position was as a crew leader or foreman while Williams's position was as a Service

Technician III.  Second, Neal's position was in a different department than Williams's position; Neal worked construction, while Williams was in the service department.

Paxton Perry

Perry, a White male, worked as a Service Technician I.  Summit has no record of providing an accommodation to Perry.  Williams relies on hearsay statements made by Perry to claim that Summit accommodated Perry.  Williams does not cite to any record evidence showing that Perry's driving of a forklift was an accommodation.

The Court finds that Perry is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage.  First, Williams's lack of record evidence regarding whether Summit accommodated Perry means that Perry cannot be a valid comparator because there is no record evidence that Perry was treated differently than Williams.  In this respect, Williams fails to meet his burden of presenting record evidence to establish the *prima facie* case of discrimination.  Moreover, even if Perry were accommodated, Perry and Williams were not similarly situated in all relevant respects.  First, Perry and Williams had different positions; Perry as Service Technician I, while Williams as Service Technician III.  Second, Perry's alleged restriction was based upon anxiety while Williams's related to substantial physical limitations.

Jeff Smith

Jeff Smith, a White male, worked as a Service Technician III in Little Rock under supervisor Travis.  Smith injured his knee on May 30, 2022.  Smith did not submit a formal request for an accommodation.  Smith's supervisor assigned him to operate machinery in the warehouse. Smith's informal reassignment to operate machinery in the warehouse lasted for approximately one week.

The Court finds that Smith is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage.  While Smith and Williams both experienced physical injuries, the Court finds that they are not similar in all relevant respects. First, Smith did not receive formal accommodations from Summit, nor did he submit a request for formal accommodation.  Second, Smith had a different supervisor than Williams.  Third, the extent of Smith's injury was substantially different than Williams's injury.  Smith injured his knee on May 30, 2022, was given physical restrictions from his physician on June 1, 2022, was released without restrictions on June 8, 2022.  Comparatively, Williams's injured his foot on February 16, 2022, was given physical restrictions from his physician that same day, and remained under physical restrictions until his termination on September 6, 2022.

Bobby Thompson

Bobby Thompson, a White male, worked at Summit's Jacksonville, Arkansas, facility.  In April 2023, Thompson requested an accommodation of no nighttime driving due to a cataract in one eye until after his scheduled cataract surgery in May 2023.  On April 28, 2023, Summit granted Bobby Thompson's requested accommodation.

The Court finds that Thompson is not similarly situated to Williams in all relevant respects, even if this Court accepts Williams's allegations at this stage.  First, Thompson and Williams worked at different facilities.  While this alone would not make Thompson and Williams too dissimilar, the nature and duration of Thompson's impairment was substantially different than Williams's injury.  Thompson sought an accommodation for one month, and that accommodation sought excuse from nighttime driving.  On the other hand, Williams's request of light duty, taken in context of the restrictions imposed by Dr. Thrash, requested walking and standing limitations

18

as well as lifting, carrying, pushing, and pulling restrictions.  Moreover, Williams's restrictions were in place for roughly six month leading up to his termination.

Because Williams fails to identify an individual who is sufficiently similar to him in all relevant respects, the Court finds that Williams fails to establish the *prima facie* case of racial discrimination under 42 U.S.C. § 1981.  However, even if Williams had established the *prima facie* case, which he does not, the Court finds that Williams's § 1981 claims fails at the next stage of the burden shifting framework.  There is no genuine dispute of material fact as to whether Williams's termination was pretextual because based upon Summit's proffered explanation, the lack of valid comparators, and Williams's lack of explanation as to why Summit's explanation was pretextual, viewing the record evidence with all reasonable inferences drawn in favor of nonmoving party Williams, no reasonable jury could find that racial discrimination was the but-for cause of Williams's termination.  Accordingly, Summit is entitled judgment as a matter of law on Williams's race discrimination claim, and the Court grants Summit's motion for summary judgment on this claim.

### IV.    Disability Discrimination Under The Americans With Disabilities Act

Williams alleges that Summit discriminated against him on the basis of disability and that Summit refused to engage in the interactive process to grant him a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  Summit moves for summary judgment and argues that it is entitled to judgment as a matter of law because Williams fails to satisfy the *prima facie* case of disability discrimination.  Summit maintains that Williams cannot show that he is a "qualified individual" under the ADA.  Williams argues that Summit refused to allow him a reasonable accommodation in violation of the ADA.

"The ADA prohibits employers from discriminating 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Ehlers v. Univ. of Minn.*, 34 F.4th 655, 659 (8th Cir. 2022) (quoting 42 U.S.C. § 12112(a)).  This discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  "To establish a *prima facie* case of disability discrimination, [Williams] 'must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability.'"  *Goosen v. Minnesota Dep't of Transportation*, 105 F.4th 1034, 1040 (8th Cir. 2024) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003).

For purposes of resolving the pending summary judgment motion, Summit does not dispute whether Williams has a disability within the meaning of the ADA (Dkt. No. 37 at 6–7).  Moreover, Summit does not argue that Williams did not suffer an adverse employment action as a result of the disability (*see* Dkt. No. 24 at 19–22 (arguing only that Williams is not a qualified individual under the ADA)).  The Court finds that Williams has presented sufficient evidence to show that he has a disability within the meaning of the ADA and that he suffered an adverse employment action because of the disability.  Thus, for summary judgment purposes, the Court addresses Summit's arguments that Williams is not a qualified individual under the ADA.

### A.    Qualified Individual

To be a qualified individual under the ADA, "an employee must (1) possess the requisite skill, education, experience, and training for [his] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Goosen*, 105 F.4th at 1040 (internal quotations omitted).    "An employee bears the burden of proving that she is a 'qualified individual.'" *Siebrecht v. Mercy Health Services – Iowa Corp.*, 163 F.4th 524, 530 (8th Cir. 2026).

"'An employer has the burden of showing a particular job function is an essential function of the job.'" *Siebrecht*, 163 F.4th at 531 (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007). Essential functions are distinguished from marginal functions. *Goosen*, 105 F.4th at 1040. Essential functions are "'the fundamental job duties of the employment position the individual with a disability holds or desires' and vary according to the job." *Id.* (quoting *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 810 (8th Cir. 2015). An employer's judgment about whether a function is an essential job function "is considered highly probative." *Duello v. Buchanan Cnty. Bd. Sup'rs*, 628 F.3d 968, 972 (8th Cir. 2010). The Eighth Circuit has directed that:

> When determining what constitutes an essential job function, we consider evidence such as: '(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.'

*Siebrecht*, 163 F.4th at 531 (quoting *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 789–90 (8th Cir. 2019). "[A] task may be an essential function even if the employee performs it for only a few minutes each week, and even if other employees are available to perform the task for the disabled employee." *Minnihan*, 779 F.3d at 812.

21

Summit argues that Williams's physical restrictions directly conflict with the essential functions of his position as a Service Technician III and that Williams is unable to perform those essential functions with or without reasonable accommodation (Dkt. No. 24, at 20–22). Williams's response mentions the legal standard of a qualified individual, but Williams does not meaningfully contest whether he fits the definition of a qualified individual (Dkt. No. 35, at 13–16). [8] For the following reasons, the Court concludes that Williams is not a qualified individual under the ADA.

### 1.     Essential Functions

The parties appear to agree upon the essential functions of the Service Technician III position. Williams admits the following regarding the duties and functions of his position:

- Williams's duties as a Service Technician III included responding to gas and carbon monoxide leak calls, performing emergency temporary line repairs, performing leak surveys and natural gas locates, reading gas meters, programming and replacing electronic remote transmitters, building meter sets to company standards, and removing, installing, and replacing gas meters including turn-on and shut-off activities and pressure tests (Dkt. No. 34, ¶ 9).

- The duties of a Service Technician III required certain physical demands, including constantly standing and walking, with only occasional sitting (*Id.*, ¶ 10).

- The Service Technician III job also requires lifting/carrying up to 20 pounds frequently and over 21 pounds occasionally and pushing/pulling up to 25 pounds frequently and over 26 pounds occasionally (*Id.*, ¶ 11).

Williams does not add any further functions, nor does he contest whether any of these functions are the essential functions of his former position. The Court finds that these responsibilities and

---

[8] "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. At Pine Bluff Bd. of Trustees*, 58 F.3d 731, 735 (8th Cir. 2009). "The "failure to oppose a basis for summary judgment constitutes waiver of that argument," because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020). The Court does not identify any opposition to Summit's basis for summary judgment regarding qualified individual status on Williams's ADA claim. However, to the extent there is a basis for opposition on the record before the Court, the Court finds that Summit is entitled to summary judgment on the merits.

requirements, particularly the physical demands, are essential functions of a Service Technician III at Summit.

### 2. Performance Of Essential Functions Without Reasonable Accommodation

Summit argues that Williams cannot perform the essential functions of the Service Technician III role without accommodation (Dkt. No. 2 at 20).  Williams does not argue that he could perform the essential functions of a Service Technician III without accommodation.  The Court concludes that no reasonable jury could find that Williams is capable of performing the essential functions of his former position with Summit—a Service Technician III—without reasonable accommodation.

The Court finds that there is no dispute of fact as to whether Williams's disability impedes his capacity to perform the essential functions of a Service Technician III without reasonable accommodation.  Williams's doctor, Dr. Thrash, determined that Williams's foot injury meant Williams could not walk, stand, climb, push, or pull, could not lift over 10 pounds, and could only occasionally lift up to 10 pounds.  These restrictions lasted for months.  Given the Service Technician III's essential functions of constant standing and walking, lifting/carrying up to 20 pounds frequently, over 21 pounds occasionally, and pushing/pulling 25 pounds frequently and over 26 pounds occasionally, the Court concludes that Williams could not perform his essential job functions without accommodation.  Because the Court concludes that Williams could not perform the essential functions of his position as a Service Technician III at Summit, the Court turns to whether Summit failed to provide reasonable accommodations to Williams that would have allowed him to perform the essential functions of his position.

### 3. Performance Of Essential Functions With Reasonable Accommodation

Summit argues that no reasonable accommodation was possible that would have allowed Williams to perform the essential functions of his job (Dkt. No. 24, at 20–22). Williams argues that Summit refused to provide him a reasonable accommodation when Summit did not permit him to return to work under "light duty" (Dkt. No. 35, at 16). In his amended complaint, Williams also argues that he would have accepted an accommodation in the form of reassignment to a different position (Dkt. No. 10, ¶ 25). Williams's response does not address whether he could perform the essential functions of his position with a reasonable accommodation (Dkt. No. 35).

Williams's first requested accommodation was that he should be permitted light duty work that alters the responsibilities of a Service Technician III such that he could perform the role. The Court determines that this is not a reasonable accommodation and fails as a matter of law. Under the ADA, "an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 709–10 (8th Cir. 2002); *see also Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). Moreover, the ADA does not "require an employer to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003). The light duty work that Williams requests fundamentally alters the essential functions of the Service Technician III position and is not a reasonable accommodation. *See Siebrecht*, 163 F.4th at 532 (finding that a reduced work schedule was not a reasonable accommodation when the ability to work the more demanding job schedule was an essential function of the job). Summit also was not required to permit Williams to return to work despite his disability when that return to work conflicted with Williams's physician imposed restrictions.

Williams's second request, to be moved to a new position as an accommodation, also fails as a matter of law.  "While reassignment to a vacant position can be a reasonable accommodation under the ADA, it is not necessarily required." *Burchett v. Target Corp.*, 340 F.3d 510, 517 (8th Cir. 2003).  The Eighth Circuit has held that a reasonable accommodation may include the reassignment of an employee.  *Faidley v. United Parcel Service of America, Inc.*, 889 F.3d 933, 941 (8th Cir. 2018) (citing *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1018 (8th Cir. 2000)).  However, "[r]eassignment is not required of employers in every instance [] and is an accommodation of last resort when the employee cannot be accommodated in his existing position."  *Goosen*, 105 F.4th at 1042.  "[R]eassignment to another position is a required accommodation only if there is a vacant position for which the employee is otherwise qualified." *Ehlers*, 34 F.4th at 660.  "To establish reassignment as a possible accommodation, an employee 'must make a facial showing that a position is available for which [she] qualifies.'" *Siebrecht*, 163 F.4th at 532 (quoting *Ehlers*, 34 F.4th at 660).  "An employee can establish that she qualifies for an available position by mak[ing] a facial showing that she satisfied the legitimate prerequisites for an alternative position and would be able to perform the essential functions of that position with or without reasonable accommodations." *Siebrecht*, 163 F.4th at 533 (internal quotations omitted); *see Cravens*, 214 F.3d at 1019.

Williams claims that he could have been reassigned to a new position, but Williams fails to make a facial showing that a new position was a reasonable accommodation.  Williams admits that he did not identify any other positions he was seeking as an accommodation or give any indication that he had searched open positions.  Moreover, Williams did not make a facial showing that that he satisfied the legitimate prerequisites for an alternative position, nor did Williams demonstrate that he would be able to perform the essential functions of that alternative position

with or without reasonable accommodations. Because Williams has failed to make this preliminary showing, this theory of reasonable accommodation fails as a matter of law.

For these reasons, Williams has not presented sufficient evidence to establish that a reasonable jury could find that he is a qualified individual under the ADA.[9] Accordingly, Summit is entitled to judgment as a matter of law on Williams's ADA claims.

### V.      Rehabilitation Act

In his amended complaint, Williams states that this action "is also brought pursuant to the Rehabilitation Act of 1973" for disability discrimination in employment (Dkt. No. 10, at 1). Summit explains that Williams does not mention the Rehabilitation Act again and argues that it does not apply here (Dkt. No. 24, at 1 n.1). Williams does not mention the Rehabilitation Act in his response in opposition to Summit's motion for summary judgment (Dkt. No. 35). Summit's reply argues that it is entitled to summary judgment under the Rehabilitation Act.

"The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient showing of the existence of an essential element of his case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1217 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)). Williams has not presented any evidence to show that there is a genuine dispute of material fact under the Rehabilitation Act. Accordingly, the Court grants Summit's motion for summary judgment on Williams's Rehabilitation Act claim.

---

[9] Williams alleges that Summit failed to engage in a good-faith interactive process (Dkt. No. 35 at 13). "But '[u]nder the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process.'" *Scruggs v. Pulaski Cnty. Ark.*, 817 F.3d 1087, 1094 (8th Cir. 2016) (quoting *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006));*see also Siebrecht*, 163 F.4th at 533 (quoting *Ehlers*, 34 F.4th at 660). Because the Court concludes there was no reasonable accommodation that would have permitted Williams to perform the essential function of his position, even if Summit failed to engage in a good-faith interactive process, there is no liability under the ADA.

## VI.    Race Discrimination Under Title VII

According to Williams in his amended complaint, Williams does not purport to bring a Title VII claim and instead brings racial discrimination claims under 42 U.S.C. § 1981 only (Dkt. No. 10).  Williams in his opposition to Summit's motion for summary judgment states that his action is brought pursuant to Title VII and sets out the legal standard of a Title VII claim (Dkt. No. 35 at 1; 9–12).

Williams may only proceed on a Title VII claim on racial discrimination if that claim is exhausted.  "Title VII requires that before a plaintiff can bring suit in court to allege unlawful discrimination, she must file a timely charge" with the Equal Employment Opportunity Commission ("EEOC").  *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).  There is no record evidence before the Court that Williams exhausted his racial discrimination claim before the EEOC; Williams's EEOC charge does not allege racial discrimination (Dkt. Nos. 1, at 11; 24-2, at 37–39).  Thus, to the extent that Williams purports to bring a Title VII race discrimination claim, the Court grants Summit's motion for summary judgment.

## VII.    Punitive And Compensatory Damages

Summit argues that Williams cannot prevail on his claim for punitive damages and cannot show an entitlement to punitive damages (Dkt. No. 24, at 22–24).  Williams does not respond to Summit's claims regarding damages.  Summit asserts that Williams has waived "his claims for compensatory and punitive damages." (Dkt. No. 37, at 11).

The Court finds that, because Williams's racial discrimination and disability discrimination claims do not survive summary judgment on the merits, it is unnecessary for the Court to address the damages issues raised by Summit in order for the Court to rule on Summit's motion for

summary judgment. Given that Williams's claims fail on the merits, the Court grants Summit's motion for summary judgment on punitive damages (Dkt. No. 23).

## VIII.    Conclusion

For these reasons, the Court grants Summit's motion for summary judgment (Dkt. No. 23). The Court enters judgment in favor of Summit on Williams's racial discrimination and disability discrimination claims. The Court dismisses with prejudice Williams's § 1981, Title VII, ADA, and Rehabilitation Act claims.

It is so ordered this 31st day of March, 2026.

_____
Kristine G. Baker
Chief United States District Judge

28